12-608-cr
United States v. Stringer

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2012

(Argued:May 9, 2013          Decided: September 17, 2013)

Docket Nos. 12-608-cr (L), 12-779-cr (CON)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

        *Appellee*,

v.

THOMAS B. STRINGER,

        *Defendant-Appellant.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before:  LEVAL, CABRANES, and PARKER, *Circuit Judges*.

      Defendant Thomas B. Stringer appeals from a judgment of conviction in the United States District Court for the Southern District of New York (Lynch, *J.*) after a jury trial at which he was found guilty of bank fraud and aggravated identity theft. Stringer contends that Count Two of the superseding indictment (the aggravated identity theft count) was constitutionally deficient, and that the district court abused its discretion in denying his request for a continuance. The Court of Appeals (Leval, *J.*) rejects both contentions. The judgment of the district court is **AFFIRMED**.

Tina Schneider, Law Office of Tina Schneider, Portland, ME, for *Appellant*.

Andrea L. Surratt, Assistant United States Attorney (Brent S. Wible, Assistant United State Attorney, *on the brief*), for Preet Bharara, United States Attorney for the Southern District of New York, for *Appellee*.

LEVAL, *Circuit Judge*:

Defendant Thomas B. Stringer appeals from his conviction on both counts of a superseding indictment after a jury trial in the United States District Court for the Southern District of New York (Lynch, *J*.). The jury found him guilty of bank fraud in violation of 18 U.S.C. § 1344 (Count One) and unlawful use of another person's means of identification in relation to the bank fraud in violation of 18 U.S.C. §§ 1028A(a)(1) and (c)(5) (Count Two). Stringer contends that Count Two was constitutionally deficient for failure to name or sufficiently identify the person or persons whose means of identification he used in the bank fraud scheme. He also contends that the superseding indictment, filed 25 days prior to the day scheduled for the start of trial, substantially altered the nature of the allegations, and that the district court therefore abused its discretion by refusing to postpone the trial to allow him adequate time to prepare to defend against the new charges. We reject Stringer's contentions and affirm the conviction.

# BACKGROUND

On June 29, 2010, Stringer was arrested on a federal criminal complaint charging him with bank fraud and aggravated identity theft. The complaint set forth a detailed factual narrative describing the nature and operation of Stringer's scheme to use names and identification documents of other persons to open bank accounts funded with forged checks and withdraw the proceeds. On July 20, 2010, the government filed a two-count indictment (the "original indictment") charging Stringer with bank fraud and aggravated identity theft. One week later, on July 27, 2010, the government made evidentiary disclosures to Stringer, which included the names of two persons which he used to open fraudulent bank accounts. On May 12, 2011, the court set down the case for a trial to begin on July 25, 2011. On June 30, 2011, the government filed a two-count superseding indictment (the "superseding indictment") charging the same offenses with some alteration of the language describing them.

The superseding indictment charged as follows:

## COUNT ONE

1. The Grand Jury charges:
From in or about February 2007 up to and including in or about August 2007, in the Southern District of New York and elsewhere, [Stringer] willfully and knowingly did execute and attempt to execute a scheme and artifice to defraud a financial institution . . . , and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, [Stringer] created counterfeit checks drawn on an account at JP Morgan Chase in Manhattan, which he deposited into fraudulently created accounts at SunTrust Bank in Florida.
(Title 18, United States Code, Sections 1344 & 2.)

COUNT TWO

2. The Grand Jury further charges:

> From in or about February 2007 up to and including in or about August 2007, in the Southern District of New York and elsewhere, [Stringer] knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, to wit, one and more names, during and in relation to a felony enumerated in Title 18, United States Code, Section 1028A(c), to wit, the bank fraud charged in Count One of this Indictment.
> (Title 18, United States Code, Sections 1028A(a)(1), (c)(5).)

*United States v. Stringer*, No. 12-0608 Appendix ("App.") 21-22.

Among the changes of language as between the original and the superseding indictments was that while Count Two of the original indictment asserted that Stringer used the name of one other person (identified as "Victim - 1") in a scheme involving bank accounts and checks in that person's name, the superseding indictment alleged without specification that Stringer used "one and more names" in carrying out the fraud scheme.

The court convened a conference to arraign Stringer on the superseding indictment on July 6, 2011. After the superseding indictment was read, Stringer asked the court about the significance of the change from the allegation of "Victim - 1" to "one and more names." The government advised that Stringer had perpetrated the fraud using at most two names. The court directed the government to advise Stringer's counsel of the two names (which in fact had been revealed in the documents disclosed by the government a year earlier). The court deferred the arraignment as to Count Two in order to allow Stringer more time to confer with his lawyer about the superseding indictment.

That evening, Stringer told his counsel he wanted a new lawyer. At a conference the following day, July 7, the court told Stringer he would not be allowed to change

4

lawyers because there was no reason to doubt his attorney's competence to try the case and because a change would necessitate delaying the trial. The district court also stated that any motion Stringer might make to adjourn the trial due to the recent filing of the superseding indictment would be denied, because the superseding indictment neither added any new charges, nor presented a new theory, nor made changes for which the defense had no ability to prepare. The court characterized the superseding indictment as charging "the same checks, the same banks, the same scheme, the same names that have been provided by the government in discovery all along," so that the changes were essentially "ministerial." *United States v. Stringer*, No. 12-0608 Government Addendum ("Add.") 20.

Stringer asserted at this conference that Count Two of the superseding indictment was defective because of the failure to specify a victim's name. The court rejected the contention but added that the government would be limited to proving the two victims (whose names had been disclosed a year earlier) so there could be "no ambiguity remaining about what the charge is." *Id.* at 19.

Trial began on July 25, 2011. On the first day of trial, Stringer submitted a motion seeking, *inter alia*, (1) to represent himself at trial; (2) to dismiss Count Two as deficient, and (3) to postpone the trial to afford him time to prepare his own defense. The district court granted Stringer's request to proceed *pro se*, but declined to dismiss Count Two or postpone the trial.

Stringer represented himself at trial, with his former defense attorney acting as stand-by counsel. On July 29, 2011, a jury found Stringer guilty on both counts of the superseding indictment.[1] Stringer moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 or, in the alternative, for a new trial pursuant to Rule 33; the district court denied both motions. His judgment of conviction was entered on February 8, 2012, and the district court sentenced him to 60 months' imprisonment, to be followed by five years' supervised release. Stringer was ordered to pay $104,731 in restitution and a $200 mandatory special assessment. This timely appeal followed.

## DISCUSSION

## I. Sufficiency of the Superseding Indictment

Stringer contends that Count Two of the superseding indictment is constitutionally defective for failure to identify any person whose means of identification he used in the commission of the bank fraud. The sufficiency of an indictment is a question of law, which we review *de novo*. *See, e.g.*, *United States v. Geibel*, 369 F.3d 682, 689 (2d Cir. 2004). Pursuant to Federal Rule of Criminal Procedure 7(c)(1), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment is sufficient if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for

---

[1] As to Count Two, the jury found Stringer guilty of aggravated identity theft as to one of the two alleged victims.

6

the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also United States v. De La Pava*, 268 F.3d 157, 162 (2d Cir. 2001) ("An indictment must sufficiently inform the defendant of the charges against him and provide enough detail so that he may plead double jeopardy in a future prosecution based on the same set of events."); *United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000) ("A criminal defendant is entitled to an indictment that states the essential elements of the charge against him.").

We reject Stringer's contention. We have held that to satisfy the pleading requirements of Rule 7(c)(1), an indictment need "do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Pirro*, 212 F.3d at 92 (internal quotation marks omitted). An indictment "need not be perfect, and common sense and reason are more important than technicalities." *De La Pava*, 268 F.3d at 162.

When a crime, unlike the murder of a specified individual, is capable of repetition on the same day, or within a specified time frame, the indictment will rarely provide sufficient detail so that, on its face, it guarantees protection against double jeopardy. Examples commonly seen in federal courts are indictments charging a defendant with having, on or about a specified date, distributed an approximate quantity of a mixture or substance containing cocaine. A defendant may have committed the acts described in such an indictment a hundred times on or about the day specified, each one separately prosecutable. Stringer's indictment included far more limiting specificity. In addition to tracking the language of the pertinent criminal statute and specifying the time frame of

7

the commission of the offense, Count Two, by cross referencing Count One, provided substantial additional detail as to the means by which Stringer committed the offense. It specified that he committed the fraud by "creat[ing] counterfeit checks drawn on an account at JP Morgan Chase in Manhattan, which he deposited into fraudulently created accounts at SunTrust Bank in Florida." App. 21. Notwithstanding its failure to specify the names of persons whose identifying documents were used, this charge, compared to many commonplace indictments, contained substantially more limiting detail.

When the charges in an indictment have stated the elements of the offense and provided even minimal protection against double jeopardy, this court has "'repeatedly refused, in the absence of any showing of prejudice, to dismiss . . . charges for lack of specificity.'" *United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999) (quoting *United States v. McClean*, 528 F.2d 1250, 1257 (2d Cir. 1976)). Here, Stringer does not even attempt to argue that he suffered any prejudice. The government had provided him with the criminal complaint, which outlined his crimes in detail, as well as disclosures that included the victims' names, well in advance of trial. Taking these disclosures into account, it is beyond question that Stringer was sufficiently informed to defend against the charges and to be protected against the risk of double jeopardy (for which the trial record provides further protection). *See Walsh*, 194 F.3d at 45 (discovery cannot save a defective indictment but, "where the indictment has been found even minimally sufficient, a court may look to the record as a whole in determining whether" the constitutional requirements have been met); *United States v. Stavroulakis*, 952 F.2d 686,

693 (2d Cir. 1992) ("When an indictment delineates the elements of a charged offense, however concisely, the underlying concerns of proper pleading—notice of the charge to be met and protection against double jeopardy—may be further promoted by a bill of particulars or pre-trial discovery."). We conclude that Count Two was not constitutionally deficient.[2]

In support of his argument, Stringer cites *Russell v. United States*, 369 U.S. 749 (1962), a 50 year-old precedent, which is one of the very rare cases in which an indictment that tracked the statutory language and furnished the pertinent dates was held insufficient. In *Russell*, the defendants were charged under a federal statute that made it a crime for a witness before a congressional committee to refuse to answer questions pertinent to the committee's inquiry, 2 U.S.C. § 192. *Id.* at 752. The case arose out of the controversial McCarthy-era hearings of the Committee on Un-American Activities of the House of Representatives and the Internal Security Subcommittee of the Senate Judiciary Committee. *Id.* at 752, n.3. The Supreme Court ruled that the indictments were insufficient because they failed to specify the subject matter of the congressional inquiry.

The Court stressed that:

[w]here . . . the indictment has not identified the topic under inquiry, the Court has often found it difficult or impossible to ascertain what the subject was. The difficulty of such a determination in the absence of an allegation in the indictment is illustrated by [a recent case in which] the members of this Court

---

[2] We note that the Eighth Circuit has recently upheld the sufficiency of a charge of the same offense. *See United States v. Dvorak*, 617 F.3d 1017, 1026 (8th Cir. 2010). Because the charging language in *Dvorak* included more identification of the victim than contained in Stringer's indictment, the *Dvorak* precedent is not helpful to either side.

were in sharp disagreement as to what the subject under subcommittee inquiry had been. . . . [In a second similar case], the Court found it not merely difficult, but actually impossible to determine what the topic under subcommittee inquiry had been at the time the petitioner had refused to answer the questions addressed to him.

*Id*. at 759.

The Court continued, in discussing another similar case previously before it:

[At the beginning of one hearing], the Chairman and other subcommittee members made widely meandering statements, purporting to identify the subject matter under inquiry. . . . But when [a subsequently charged defendant] was called to testify before the subcommittee no one offered even to attempt to inform him of what subject the subcommittee did have under inquiry. . . . It is difficult to imagine a case in which an indictment's insufficiency resulted so clearly in the indictment's failure to fulfill its primary office–to inform the defendant of the nature of the accusation against him.

*Id*. at 767.

In light of these statements, it is clear that the Supreme Court's decision in *Russell* must be seen as addressed to the special nature of a charge of refusal to answer questions in a congressional inquiry and not as a broad requirement applicable to all criminal charges that the indictment specify how each essential element is met. This view of *Russell* was confirmed by the Supreme Court's more recent decision in *United States v. Resendiz-Ponce*, 549 U.S. 102 (2007). In that case, the Supreme Court rejected the contention that an indictment charging a previously deported alien with illegal "attempt" to reenter the United States was deficient for failure to specify the overt acts constituting the attempt. The Court agreed with the defendant's proposition that "an overt act qualifying as a substantial step towards the completion of" the illegal objective was an

10

essential element of the crime of attempt, but nonetheless concluded that an indictment asserting the "attempt" without specification of the acts constituting the attempt was legally sufficient. *Id*. at 107-08. Addressing the defendant's contention that the Court's ruling in *Russell* supported his argument, the Court explained:

> [Defendant] is of course correct that while an indictment parroting the language of a federal criminal statute is often sufficient, there are crimes that must be charged with greater specificity. A clear example is the statute making it a crime for a witness summoned before a congressional committee to refuse to answer any question pertinent to the question under inquiry. . . . As we explained at length in our opinion in *Russell* . . . , a valid indictment for such a refusal to testify must go beyond the words of [the statute] and allege the subject of the congressional hearing in order to determine whether the defendant's refusal was pertinent. Based on a number of cases arising out of congressional investigations, we recognized that the relevant hearing's subject was frequently uncertain but invariably central to every prosecution under the statute. Both to provide fair notice to defendants and to ensure that any conviction would arise out of the theory of guilt presented to the grand jury, we held that indictments under [that statute] must do more than restate the language of the statute.

*Id*. at 109-10 (internal citation and quotation marks omitted).

The *Resendiz-Ponce* Court concluded that the reasoning of *Russell* "suggests that there was no infirmity [in the indictment alleging illegal attempted reentry into the United States]. . . . [U]nlike the statute at issue in *Russell*, guilt under [the statute charged against Resendiz-Ponce] does not depend so crucially upon such a specific identification of fact." *Id*. at 110 (internal quotation marks omitted).

The message of the Supreme Court's discussions in *Russell* and *Resendiz-Ponce* is that for certain statutes specification of how a particular element of a criminal charge will be met (as opposed to categorical recitation of the element) is of such importance to the fairness

11

of the proceeding that it must be spelled out in the indictment, but there is no such universal requirement. *See Hamling*, 418 U.S. at 118 (explaining *Russell* as holding that, "[w]here guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute" (internal quotation marks omitted)). Other examples that courts have found to fall in that less-common category have been specification of what statements are alleged to be false, and in what respect they are false, in charges of criminal falsity, *see United States v. Tonelli*, 577 F.2d 194, 200 (3d Cir. 1978) ("Because the indictment in this case did not set forth the precise falsehoods alleged and the factual bases of their falsity with sufficient clarity to permit a jury to determine their verity and to allow meaningful judicial review of the materiality of those falsehoods, the conviction here must be vacated." (internal quotation marks and alterations omitted)); *Pirro*, 212 F.3d at 93 (same for indictment charging filing of a false tax return), and the type of controlled substance alleged to have been manufactured, distributed, dispensed, or possessed when charging under the controlled substances statute, 21 U.S.C. § 841, *see, e.g.*, *United States v. Thomas*, 274 F.3d 655, 660 (2d Cir. 2001) (type of drugs is an element of the offense that must be charged in the indictment). We do not believe that the name of the victim in a charge under Section 1028A falls in that narrow category.[3] It is of course an essential element of the charge, unquestionably important, and

---

[3] Stringer is correct that the Supreme Court held in *Flores-Figueroa v. United States*, 556 U.S. 646 (2009) that the text of "[18 U.S.C.] § 1028A(a)(1) requires the Government to show that the defendant knew that the means of identification at issue belonged to another person." *Id.* at 657. Nothing in *Flores-Figueroa*, however, suggests that an indictment must specify the name of an alleged victim. Indeed, by tracking the statutory language of 18 U.S.C. § 1028A–and alleging that Stringer "knowingly did transfer, possess, and use, without lawful authority, a

the defendant is of course entitled on demand to its disclosure in a bill of particulars or otherwise. However, we conclude that, notwithstanding the failure of Stringer's indictment to name the persons whose means of identification were used in the commission of bank fraud, the indictment was constitutionally adequate.

**II. Denial of the Continuance**

Stringer's second contention is that the district court abused its discretion in refusing to postpone the trial date upon the filing of the superseding indictment to allow him additional time to prepare to meet the new charges.[4] There is no merit in this contention. This is for two reasons. First, during the pre-trial proceedings Stringer never asked for an adjournment of trial based on changes introduced by the superseding indictment. He did ask to postpone the trial, but gave other reasons in support of the demand–his desire to change lawyers and his decision to represent himself.[5] The court reasonably refused to adjourn trial on these bases. Second, trial courts enjoy very broad discretion in granting or denying trial continuances. *Sanusi v. Gonzales*, 445 F.3d 193, 199-200 (2d Cir. 2006). Appellate review of a trial court's refusal to delay trial is for

means of identification of another person"–the superseding indictment necessarily charged Stringer with knowingly using the name of a real, as opposed to a fictitious, person unlawfully.

[4] Stringer is not contending that the filing of a superseding indictment triggered a requirement of a 30-day delay prior to trial under the Speedy Trial Act, 18 U.S.C. § 3161(c)(2), a position the Supreme Court rejected in *United States v. Rojas-Contreras*, 474 U.S. 231, 234 (1985). He argues only that the court abused its discretion in failing to postpone the trial.

[5] Were we to conclude that some of Stringer's arguments made on his own behalf at the July 6 and 7, 2011 conferences should be construed as requesting postponement of the trial by reason of need to prepare to defend against new allegations in the superseding indictment, this would not change our ruling, as the district court's refusal to postpone the trial based on its assessment that the changes were insubstantial was clearly within its discretion.

13

abuse of discretion, and "we will find no such abuse unless the denial was an 'arbitrary action that substantially impaired the defense.'" *United States v. O'Connor*, 650 F.3d 839, 854 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 1040 (2012) (quoting *United States v. Beverly*, 5 F.3d 633, 641 (2d Cir. 1993)). A defendant must show "both arbitrariness and prejudice in order to obtain reversal of the denial of a continuance." *United States v. Miller*, 626 F.3d 682, 690 (2d Cir. 2010). Stringer has failed to establish either.

While the changes in language from the original indictment to the superseding indictment, which included an additional month in the period during which Stringer was alleged to have carried out his scheme of fraud, could have provided for the inclusion of very extensive criminal activity not covered by the original indictment, the district court satisfied itself that in fact the superseding indictment introduced no significant change. There was no abuse of discretion, indeed no impropreity of any kind in the court's ruling.

## CONCLUSION

The judgment of the district court is **AFFIRMED**.

14