In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1679

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RYAN MILLER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CR 292 — **Edmond E. Chang**, *Judge.*

ARGUED NOVEMBER 28, 2017 — DECIDED MARCH 5, 2018

Before BAUER, ROVNER, and SYKES, *Circuit Judges*.

BAUER, *Circuit Judge.* Defendant-appellant, Ryan Miller, entered into a written plea agreement with the government and pleaded guilty to mail fraud affecting a financial institution, in violation of 18 U.S.C. § 1341, and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). Miller now appeals on the grounds that the indictment failed to specify

proper means of identification; that the district court improperly applied two points to his criminal history calculation under U.S.S.G. § 4A1.1(d) for committing the charged crimes while under a criminal justice sentence; and that the district court improperly mandated participation in the inmate financial responsibility program ("IFRP").

## I.  BACKGROUND

Between July 2007 and December 2009, Miller obtained and possessed identifying information for a number of individuals without their knowledge or consent. Miller possessed at least some personal identifying information, including names, addresses, birth dates, and social security numbers for over 200 individuals in a notebook. Miller knew this information belonged to at least one actual person and that he lacked authorization to have this information.

Miller used this personal identifying information to open credit card accounts with financial institutions, falsely representing that these individuals had applied for cards. To receive the fraudulently obtained credit cards, Miller opened mailboxes at UPS stores in the Chicago area under the victims' names. Miller then used these fraudulently obtained credit cards to withdraw cash from ATMs.

From approximately October 2009 through February 2010, as part of a second scheme, Miller fraudulently obtained unemployment insurance benefits from the Texas Workforce Commission ("TWC"), an agency that administers unemployment insurance in Texas. Using personal identifying information belonging to other individuals, Miller submitted more than 600 fraudulent claims for unemployment insurance

benefits to the TWC. In response to these submissions, TWC sent debit cards to the Chicago mailboxes Miller opened using personal identifying information he unlawfully possessed. Miller used these debit cards to withdraw money from ATMs.

## II. PROCEDURAL HISTORY

On April 14, 2011, a grand jury returned a twelve-count indictment against Miller. In relation to his fraudulent credit card scheme, the grand jury charged Miller with conspiring to commit mail fraud, bank fraud, and identity theft, in violation of 18 U.S.C. § 371 (Count One); mail fraud, in violation of 18 U.S.C. § 1341 (Counts Two and Three); bank fraud, in violation of 18 U.S.C. § 1344 (Counts Four and Five); identity theft, in violation of 18 U.S.C. § 1028(a)(7) (Count Six); and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Count Seven). In relation to Miller's fraudulent unemployment benefits scheme, the grand jury charged Miller with mail fraud, in violation of 18 U.S.C. § 1341 (Counts Eight, Nine, Ten, and Eleven), and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Count Twelve).

After releasing him on bond, the district court discovered Miller stole $13,750 from the correctional facility where he had initially been detained, prompting the district court to issue a bench warrant for his arrest. Miller fled to, and was later found, in the Dominican Republic in February 2015. Upon extradition to the Northern District of Illinois, Miller sought a bill of particulars in regards to Count Twelve and moved to dismiss Counts Six, Seven, and Twelve, for duplicity and lack of specificity. The district court denied these motions. The government then provided Miller with additional details

regarding these three counts and amended the indictment to dismiss Count One and narrow the predicate offenses in Counts Six and Seven from mail fraud and bank fraud to solely mail fraud.

Relevant to the issues before us, Count Six of the original indictment alleged that Miller

> knowingly possessed, without lawful authority, means of identification of another person, namely a notebook containing more than 200 names, dates of birth, and Social Security numbers for various persons, with the intent to commit and to aid and abet, and in connection with, unlawful activity constituting a violation of Federal law, namely mail fraud, in violation of Title 18, United States Code, Section 1341, and bank fraud, in violation of Title 18, United States Code, Section 1344

all in violation of § 1028(a)(7). Count Seven charged Miller with aggravated identity theft, in violation of § 1028A(a)(1), adopting the same language, but noting that the possession was "during and in relation to mail fraud as described in Count Two of this Indictment and bank fraud as described in Count Four of this Indictment." Count Twelve charged Miller with having "knowingly possessed, without lawful authority, means of identification of another person, namely names, dates of birth, and Social Security numbers for various persons, during and in relation to mail fraud as described in Count Eight of this Indictment," in violation of § 1028A(a)(1). The amended indictment only changed references to bank fraud from Counts Six and Seven.

On September 9, 2015, Miller pleaded guilty to Counts Two and Seven of the amended indictment, pursuant to a written conditional plea agreement with the government. As part of this agreement, the government promised to dismiss the remaining counts and Miller reserved his right to appeal the district court's prior orders denying his motion to dismiss Counts Six, Seven, and Twelve of the original indictment. Furthermore, as part of the agreement, Miller admitted that his credit card scheme began no later than July 2007 and continued through December 2009. He also admitted that during this time frame, he "fraudulently obtained and possessed personal identifying information for individuals, including names, addresses, social security numbers, and birth dates without the knowledge and consent of the individuals." Miller reiterated this same time frame in his sentencing memorandum.

The district court sentenced Miller on March 18, 2016. The PSR calculated a base offense level of 13, with a criminal history of VII, which the district court adopted. Because Miller had served two concurrent terms of imprisonment in Texas starting on May 1, 2008, the court assessed two of these criminal history points under U.S.S.G. § 4A1.1(d). This section calls for two criminal history points where "the defendant committed the instant offense while under any criminal justice sentence, including … imprisonment." The probation officer and district court found that these sentences took place during the commission of the mail fraud scheme. Miller failed to object to the criminal history calculation prior to and during his sentencing hearing.

In regard to restitution, the district court stated, "[d]uring prison, the payment schedule will be through the [IFRP]."

Miller never objected to the district court's directive that payments toward restitution made during imprisonment "shall be made through [IFRP]."

## III.  DISCUSSION

On appeal, Miller contends that the original indictment failed to specify proper identification of the victims, thus failing to afford him proper notice of the charges made against him. He also argues the district court plainly erred in assessing two criminal history points under U.S.S.G. § 4A1.1(d) for committing the charged crimes while under a criminal justice sentence, and in ordering his participation in the IFRP. We address each one in turn.

### A.  Specificity of Identification in the Indictment

The sufficiency of an indictment is reviewed *de novo*. *United States v. Nayak*, 769 F.3d 978, 979 (7th Cir. 2014). An indictment is sufficient so long as it: "(1) states the elements of the offense charged; (2) fairly informs the defendant of the nature of the charge so that he may prepare a defense; and (3) enables him to plead an acquittal or conviction as a bar against future prosecutions for the same offense." *United States v. McLeczynsky*, 296 F.3d 634, 636 (7th Cir. 2002) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)). Additionally, "[i]ndictments are reviewed on a practical basis and in their entirety, rather than 'in a hypertechnical manner.'" *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000) (quoting *United States v. McNeese*, 901 F.2d 585, 602 (7th Cir. 1990)).

Miller argues, in a "hypertechnical manner," that because the language in the statute makes it a crime to possess "*a*

means of identification of another person," an allegation of a single means of identification is implicated. Thus, each count must identify a specific means of identification for a specific individual. We disagree.

Our sister circuit has addressed an issue nearly identical to the one at bar. In *United States v. Stringer*, the defendant contended his indictment was constitutionally defective due to its failure to identify a specific individual whose identification he used in his bank fraud scheme. 730 F.3d 120, 123 (2d Cir. 2013). That indictment alleged:

> From in or about February 2007 up to and including in or about August 2007 … [defendant] knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, to wit, one and more names, during and in relation to a felony enumerated in Title 18, United States Code, Section 1028A(c), to wit, the bank fraud charged in Count One of this Indictment.

> *Id.* at 122.

The Second Circuit found the indictment constitutionally sound. *Id.* at 124–25. In so finding, the court reasoned that "[i]n addition to tracking the language of the pertinent criminal statute, and specifying the time frame of the commission of the offense, Count Two, by cross referencing Count One, provided substantial additional detail as to the means by which [the defendant] committed the offense." *Id.* at 124. The court noted that "[n]otwithstanding its failure to specify the names of persons whose identifying documents were used," the defen-

dant's indictment "contained substantially more limiting detail" in comparison to other common indictments. *Id.*

We find *Stringer* particularly applicable here. Miller's indictment contained equally limiting detail, including the time frame in which he committed the offenses, language of the pertinent criminal statutes, and detailed means by which Miller committed these offenses. The lack of specific identification of the victims does not make the indictment insufficient. Moreover, the government provided Miller with the names of the victims in pretrial disclosures, thus giving him notice, as well as time, to object to the victims claiming harm from Miller. For these reasons, we find the indictment sufficiently notified Miller of the charges against him.

Miller also argues the indictment is duplicitous because Counts Six, Seven, and Twelve aggregate multiple offenses within a single count. We disagree.

"An indictment that charges two or more distinct offenses within a single count is duplicitous." *United States v. Hassebrock*, 663 F.3d 906, 916 (7th Cir. 2011). "However, an indictment charging multiple acts in the same count, each of which could be charged as a separate offense, may not be duplicitous where these acts comprise a continuing course of conduct that constitutes a single offense." *United States v. Buchmeier*, 255 F.3d 415, 421 (7th Cir. 2001). Congress determines the intended unit of prosecution for a particular statute. *United States v. Cureton*, 739 F.3d 1032, 1041 (7th Cir. 2014). Thus, to determine whether a count is duplicitous, we must exercise statutory interpretation. *Id.* at 1040. We review questions of statutory interpretation *de novo*. *Id.*

Sections 1028(a)(7) and 1028A(a)(1) both criminalize the knowing possession of "*a* means of identification of another person" (emphasis added). Section 1028(d)(7)(A) defines "means of identification" for purposes of §§ 1028(a)(7) and 1028A(a)(1) as "*any* name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including *any* … name, social security number, date of birth." (emphases added).

The Supreme Court previously found an ambiguity in the use of "any" in 18 U.S.C. § 2421, where the statute read, "[w]hoever knowingly transports in interstate or foreign commerce … any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose." *Bell v. United States*, 349 U.S. 81, 84 (1955). Similar ambiguity exists in § 1028(d)(7)(A), which is compounded by the use of "a" in §§ 1028(a)(7) and 1028A(a)(1).

The use of "a" in §§ 1028(a)(7) and 1028A(a)(1) could be interpreted as a single means of identification tied to a single individual. However, the use of "any" in defining the "means of identification" lends to interpretation as a means of identification for multiple names, social security numbers, or dates of birth, thus encompassing the plural.

When statutory text presents us with uncertainty as to the unit of prosecution intended by Congress, we turn to the rule of lenity. *Cureton*, 739 F.3d at 1044. Under this rule, "if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses." *Bell*, 349 U.S. at 84. We have turned to the rule of lenity in cases interpreting the

use of "any" in other criminal statutes. *See Cureton*, 739 F.3d at 1043 (concluding that where a defendant "only used a firearm once, in the simultaneous commission of two predicate offenses … he may only stand convicted of one violation of § 924(c)"); *see also Buchmeier*, 255 F.3d at 422 (concluding that "when a defendant's possession of multiple firearms is simultaneous and undifferentiated, the government may only charge that defendant with one violation of § 922(g)(1) and § 922(j)"); *see also United States v. Oliver*, 683 F.2d 224, 232 (7th Cir. 1982) (finding that a convicted felon in possession of a firearm and ammunition could only be charged with one violation of § 922(h) when the government "failed to show that the ammunition and revolver were acquired at different times").

Here, Miller possessed over 200 means of identification in a single notebook, used to carry out a common credit card scheme. To hold that each individual means of identification constitutes a separate count would expose Miller to the possibility of over 200 counts charged against him. This certainly is not what Congress intended. Thus, we conclude that where Miller possessed multiple means of identification in a single notebook as part of a common credit card scheme, he can only be convicted of one violation of § 1028(a)(7) and one violation of § 1028A(a)(1).

## B.  Committing Charged Crimes While Under a Criminal Justice Sentence

As a question of law, we review interpretation of the Sentencing Guidelines *de novo*. *United States v. Alcala*, 352 F.3d 1153, 1156 (7th Cir. 2003). However, when a defendant fails to

object to a district court's criminal history point calculation, as was indisputably the case here, we review for plain error. *United States v. Jenkins*, 772 F.3d 1092, 1097 (7th Cir. 2014). Under plain error, we will reverse the district court's determination "only when we find: (1) an error or defect (2) that is clear or obvious (3) affecting the defendant's substantial rights (4) and seriously impugning the fairness, integrity, or public reputation of judicial proceedings." *United States v. Anderson*, 604 F.3d 997, 1002 (7th Cir. 2010) (citing *United States v. Olano*, 507 U.S. 725, 736 (1993)).

U.S.S.G. § 4A1.1(d) instructs the court to "[a]dd 2 points if the defendant committed the instant offense while under any criminal justice sentence, including … imprisonment." Miller argues that the two points added under this section are plain error due to a lack of evidence in the record that he committed any part of this offense while in prison. We disagree.

Miller's plea agreement states, "[b]eginning no later than in or about July 2007, and continuing until on or about December 2009 … Miller knowingly devised, intended to devise, and participated in a scheme to defraud." It is undisputed that Miller was in prison in 2008, which is encompassed by the time frame in his plea agreement. While Miller may not have been actively taking money from victims while in prison, we do not find this fact dispositive. During his time in prison, Miller maintained constructive possession of the fraudulently obtained credit cards, as well as the notebook containing the identifying information of the victims. He also maintained control over the fraudulently opened mailboxes, where credit card statements continued to be received during his incarcera-

tion. Thus, we find the district court did not plainly err in adding the two points under U.S.S.G. § 4A1.1(d).

### C.  **Inmate Financial Responsibility Program**

Turning to the district court's order mandating Miller's participation in the IFRP, both parties agree that the district court improperly mandated Miller's participation in the program. In *United States v. Boyd*, we found plain error for this same order. 608 F.3d 331, 334–35 (7th Cir. 2010). We addressed the error by modifying the sentence to clarify that participation in the IFRP was voluntary, without requiring remand. *See Id.* at 335. We find this appropriate here as well, and thus, order modification on appeal to reflect that Miller's participation in IFRP is voluntary.

### IV.  **CONCLUSION**

For the foregoing reasons, we AFFIRM AS MODIFIED.