VICTOR MARRERO, United States District Judge.
On December 11, 2018, a grand jury returned an indictment charging defendant Lloyd Kidd ("Kidd") with two counts of commercial sex act exploitation of minors in violation of 18 U.S.C. Section 1591 (" Section 1591"). (See "Original Indictment," Dkt. No. 1.) Count One describes the violation as concerning "Victim-1"; Count Two for "Victim-2." On June 5, 2019, a grand jury returned a four-count superseding indictment, adding to the Original Indictment two counts charging *368 commercial sex act exploitation in violation of Section 1591. (See "Superseding Indictment," Dkt. No. 29.) Trial is scheduled to begin on Monday, July 8, 2019.
Kidd now moves to (1) dismiss the Original Indictment; (2) obtain a bill of particulars; and (3) suppress certain evidence. (See "Notice of Motion," Dkt. No. 20; "Motion to Suppress," Dkt. No. 23.)[1] The Government opposes these requests. (See "Gov. Opp'n," Dkt. No. 25.)
The Court held a hearing on June 13, 2019, during which it denied in part the Motion to Suppress. The Court now states its findings, reasoning, and conclusions in support of that ruling.
I. BACKGROUND
Because Kidd's Motion to Suppress challenges multiple warrants and searches in this matter, the Court briefly summarizes each of them below.
On December 4, 2018, Magistrate Judge Ona T. Wang issued a warrant authorizing the Government to obtain historical and prospective cellphone location information for two cellphone numbers associated with Kidd, including a number ending in -7216 (the "7216 Number"). (See "December 4 Location Data Warrant," Dkt. No. 21-2.)
On December 11, 2018, Magistrate Judge James L. Cott signed an arrest warrant (the "December 11 Arrest Warrant") for Kidd, which was executed early the next morning at an apartment in Brooklyn, New York (the "Apartment").
On the morning of his arrest, Kidd answered the door to members of the New York Police Department and the Federal Bureau of Investigation (the "Officers"), who immediately handcuffed him and then did a protective sweep of the Apartment. During that protective sweep, the Officers found three women in the apartment. Additionally, the Officers allegedly saw two safes in plain view, one in Kidd's bedroom (the "Bedroom Safe") and one in Kidd's bedroom closet (the "Closet Safe," and together with the "Bedroom Safe," the "Safes"). The women found in the Apartment told the Officers that certain evidence and money from Kidd's alleged criminal activity could be found in the Safes.
Later that day, the Officers obtained a warrant to search the Safes. (See "December 12 Safe Warrant," Dkt. No. 25-4.) Inside the Safes were certain electronic devices, such as hard drives, computers, and cellphones. The Officers also found numerous other electronic devices in the Apartment. In total, the Officers found twenty-two electronic devices (the "Seized Electronic Devices") in the Apartment and Safes.
Almost three months later, on March 7, 2019, the Government obtained a warrant to search the Seized Electronic Devices. (See "March 7 Electronic Devices Warrant," Dkt. No. 25-3.)
II. DISCUSSION
Kidd's arguments fall into two categories. The first category challenges the sufficiency of the Original Indictment itself. The second challenges aspects of warrants and searches. The Court addresses each in turn.
A. ORIGINAL INDICTMENT
Kidd argues that the Original Indictment fails to give notice of the charges he must defend against at trial and is not *369 specific enough to protect his double jeopardy rights should he prevail at trial. (See Motion to Suppress at 3-4 (citing Russell v. United States, 369 U.S. 749, 765, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) ).) Specifically, Kidd demands the disclosure of details such as the ages or identities of Victim-1 and Victim-2, the dates he met with them, and what type of force or threat he allegedly used to recruit them. According to Kidd, without these details, the Original Indictment must be dismissed. Alternatively, Kidd asks that the Government provide a bill of particulars including such details.
The Government responds that the Original Indictment is valid because it adequately and permissibly tracks the language of the statute under which the Government is charging Kidd. (See Gov. Opp'n at 5.)
As the Court of Appeals for the Second Circuit has explained, "the dismissal of an indictment is an extraordinary remedy" reserved for circumstances that implicate "fundamental rights." United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001) (internal quotation marks omitted). An indictment need "do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998) (internal quotation marks omitted).
The Court is not persuaded that the details Kidd seeks must be contained in the Original Indictment. First, the Second Circuit routinely upholds the "on or about" language used to describe the window of when a violation occurred. See United States v. Nersesian, 824 F.2d 1294, 1323 (2d Cir. 1987) (holding that "on or about June 1984" put a defendant on notice for potential crimes in July or early August of 1984 "because the [G]overnment is not required to prove the exact date, if a date reasonably near is established").
Next, the notes to the Federal Rules of Criminal Procedure specifically permit the Government to allege "that the defendant committed [the offense] by one or more specified means." United States v. Pierre-Louis, No. 16 CR. 541, 2018 WL 4043140, at *4 (S.D.N.Y. Aug. 9, 2018) (quoting Fed. R. Crim. P. 7(c) note to subdivision (c)(1)). Thus, to prevent dismissal, the Government need not provide the details of what type of force or threat Kidd allegedly used.
Similarly, the lack of any identity or date of birth information of the alleged victims does not warrant dismissal of the Original Indictment. The identity of a victim is not required in an indictment unless it is "of such importance to the fairness of the proceeding that it must be spelled out in the indictment." United States v. Stringer, 730 F.3d 120, 126 (2d Cir. 2013).
Stringer is particularly relevant to this case. There, the Second Circuit held that the identity of a victim was not required to be contained in an indictment, despite the centrality of the victim's identity to the charge: the defendant was charged with using "a means of identification of another person ... during and in relation to ... bank fraud." Id. at 122 (citing 18 U.S.C. § 1028A(c) ). The Court is not persuaded that the identities of Victim-1 or Victim-2 are more critical to Kidd than they were to the defendant facing identity theft charges in Stringer.
However, Stringer also suggests that for identity-theft charges, identity information "is of course an essential element of the charge, unquestionably important, and the defendant is of course entitled on demand to its disclosure in a bill of particulars or otherwise." Id. at 127.
The Government offers that it has produced sufficient information to Kidd about *370 the charges he faces in the Original Indictment, obviating the need for a bill of particulars. (See Gov. Opp'n at 8-9.) Not only does Kidd contest the sufficiency of this information, he challenges its veracity, noting that the alleged victims' pseudonyms are inconsistent across documents. (See "Reply," Dkt. No. 31, at 3-4.)
The Court is inclined to agree that the information the Government has provided in discovery should obviate the need for a bill of particulars. However, as ordered during the June 13, 2019 Hearing, the Government shall submit a letter to the Court confirming its prior representations about the ages of the victims specified in the Original Indictment. The Court otherwise denies the part of the Motion to Suppress that seeks to dismiss the Original Indictment.
B. DECEMBER 4 LOCATION DATA WARRANT
Kidd seeks to suppress both "any location information" and "evidence obtained using the location information" connected to the 7216 Number and resulting from the December 4 Location Data Warrant. Specifically, Kidd claims that the Government made a material misstatement of fact in support of the December 4 Location Data Warrant which necessitates an evidentiary hearing to determine whether to suppress that evidence. (See Motion to Suppress at 17-19.)[2]
Special Agent Brian Mitchell ("Mitchell") authored the agent affidavit in support of the December 4 Location Data Warrant. (See "Mitchell Affidavit," Dkt. No. 25-5, at 7-12.) Mitchell described a website "formerly used to post commercial sex advertisements." (Id. at 4.) According to Mitchell, a minor victim accessed this website and called a cellphone number listed on the online advertisement, which led the minor victim to a meeting with an individual named "Red." During the meeting with Red, the minor victim and others allegedly engaged in prostitution. That minor victim, as well as another victim, then reviewed a photograph of Kidd and identified him as Red. Mitchell examined a number of these online advertisements and found that Kidd listed the 7216 Number "in connection with multiple advertisements." (Id. at 5.) Mitchell also stated that Kidd listed the 7216 Number in connection with an application for food stamps. (See id. )
In contrast to Mitchell's findings, Kidd's review of the discovery in this case has identified no online advertisements listing the 7216 Number. Kidd's counsel raised this discrepancy with the Government, which has thus far not produced any online advertisement listing the 7216 Number. (See Dkt. No. 26 at 2.)
Kidd argues that, because the Government can point to no online advertisement listing the 7216 Number, Mitchell's findings about the 7216 Number's listing in connection with the online advertisements constitute a lie or reckless statement. Kidd requests a Franks hearing to determine whether probable cause existed to issue the December 4 Location Data Warrant in light of this alleged misstatement. (See Motion to Suppress at 17-19.)
In response, the Government claims that even if Mitchell did not find the 7216 Number listed in connection with the online advertisements, there was probable cause to issue the December 4 Location Data *371 Warrant. In support of a finding of probable cause, the Government highlights that the minor victims talked to Kidd on his cellphone and Kidd listed the 7216 Number on an application for food stamps. (See Gov. Opp'n 27-28.)
The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Though a warrant affidavit is presumed to be correct, Franks v. Delaware, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), "[i]n certain circumstances ... a defendant may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure." United States v. Awadallah, 349 F.3d 42, 64 (2d Cir. 2003).
A material misstatement -- even one made with "reckless disregard for the truth" -- in a warrant application does not automatically entitle a defendant to a Franks hearing. United States v. Rajaratnam, 719 F.3d 139, 157 (2d Cir. 2013). Rather, the district court is permitted to determine whether, based on the record before the magistrate judge, and disregarding the challenged material, there was sufficient evidence to find probable cause without the material misstatement. Id.; see also Franks, 438 U.S. at 154, 98 S.Ct. 2674 ("[I]f the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.").
The Court is persuaded that the Mitchell Affidavit supports a finding of probable cause even without the statement that Kidd listed the 7216 Number in connection with an online advertisement. Omitting that statement, the following facts support probable cause to search for location data regarding the 7216 Number: (1) multiple victims identified Kidd in photographs of him; (2) one of the victims spoke to Kidd after calling a cellphone number on an online advertisement; and (3) Kidd listed the 7216 Number on an application for food stamps. Taken together, the food stamps application connected the 7216 Number to Kidd, who was otherwise identified by victims. Based on that information, along with the other facts regarding Kidd's use of technology and criminal conduct, the Court finds that there was probable cause for the December 4 Location Data Warrant even without a Franks hearing.
Accordingly, the Court denies the part of Kidd's Motion to Suppress that requests a Franks hearing regarding the December 4 Location Data Warrant.
C. PROTECTIVE SWEEP
Kidd challenges the Officers' protective sweep of his apartment, seeking to suppress any evidence obtained from the search of items seized during the protective sweep. Kidd raises two arguments. First, he contests the Officers' assertions that they found the Safes and certain Seized Electronic Devices in plain view. Second, Kidd argues that the Seized Electronic Devices exhibited no inherently incriminating characteristics that justified their seizure. (See Motion to Suppress at 11-14.)
The first argument, concerning whether the seized items were in plain view, in light of the Officers' sworn statements to the contrary, raises a factual question requiring an evidentiary hearing. The Court will defer ruling on that question until after the evidentiary hearing currently scheduled to be held on June 21, 2019.
Regarding the second argument, the Government contends that probable cause *372 supported the seizure of the Seized Electronic Devices, based on the type of crimes at issue and the expertise of the Officers. (See Gov. Opp'n at 12-13.)
Under the Fourth Amendment, a warrant authorizing the arrest of a defendant at his or her home permits the arresting officers to enter the home, but does not permit the arresting officers to search the home intrusively. See, e.g., United States v. Delva, 858 F.3d 135, 148-49 (2d Cir. 2017).
Rather, once the arresting officers enter the home to effect the arrest, they are permitted to conduct a protective sweep. See id. The scope of such a protective sweep is limited "to that which is necessary to protect the safety of officers and others." Id. at 149 (internal quotation marks omitted). Thus, during a protective sweep, officers may search "spaces where a person may be found" such as "closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Id. at 148-49 (internal quotation marks omitted).
The protective sweep doctrine limits the scope of where and how an arresting officer may search the home; the plain view doctrine limits whether they can seize objects they find during the sweep. Under the plain view doctrine, officers may seize an object "if its incriminating character is immediately apparent" as long as the officers are "lawfully in a position" to view and access the object. Id. at 149 (internal quotation marks omitted).
The Court is persuaded that the Officers were permitted to seize the Seized Electronic Devices found in plain view. Kidd argues that the Seized Electronic Devices were not inherently incriminating in nature to justify seizure under the plain view doctrine. However, the "[s]eizure of everyday objects in plain view is justified where the officers have probable cause to believe that the objects contain or constitute evidence." United States v. Babilonia, 854 F.3d 163, 180-81 (2d Cir. 2017) (collecting cases in which courts have upheld the seizure of electronic devices when officers had probable cause to believe the devices contained relevant evidence). In Babilonia, the Second Circuit upheld the warrantless seizure of a cellphone, iPad, and address book. The Second Circuit explained that the investigation into the defendant's murder-for-hire scheme revealed that the scheme "involved the use of multiple [cellphones]" and separately, that the defendant used cellphones for "drug-related activity." Id. at 180. These facts were sufficient to justify the seizure of the cellphone, iPad, and address book. See id.
Like the investigation in Babilonia, the investigation here provided probable cause that the Seized Electronic Devices contained or constituted evidence of the crime. For example, at a minimum, the December 4 Location Data Warrant already specified that Kidd (1) listed a cellphone number on online advertisements;[3] (2) spoke with a minor victim who called that number; (3) took photographs of the minor victims; and (4) posted those photographs online. (See Mitchell Affidavit at 10-11.) Although the Officers were likely aware of even more relevant facts, these facts alone would permit the Officers -- trained to identify relevant evidence for Kidd's alleged crimes[4] -- *373 and thus likely aware of commonplace experience that electronic devices are used to post and store photographs and other materials online, legal and illegal -- to have probable cause to conclude that the Seized Electronic Devices contained evidence of the crimes for which Kidd was arrested.
Of course, the Court is mindful that, as Kidd emphasizes, the ubiquity and importance of cellphones in modern culture means that adults may own multiple cellphones and thus "the presence alone of a cell phone, or even several cell phones, in a home is not inherently incriminating." Babilonia, 854 F.3d at 180.
Kidd's emphasis, however, falls short of a reason to suppress any evidence found on the Seized Electronic Devices. At first, Kidd merely states that the Seized Electronic Devices are not incriminating and are subject to heightened privacy protections under Riley v. California, 573 U.S. 373, 394-97, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014). (See Motion to Suppress at 13.) In his Reply, Kidd attempts to differentiate Babilonia by highlighting the "extensive wiretap investigation" present in that case but lacking here. (Reply at 6.) However, the agent who searched the defendant's apartment in Babilonia was "investigating [the defendant] for narcotics trafficking and a murder-for-hire conspiracy that involved cell phones" and was merely "aware of a wiretap investigation into [defendant's] drug trafficking activities that involved cell phones." Babilonia, 854 F.3d at 172. That is, even if there was an extensive wiretap investigation, it was separate from the agent's investigation of the defendant for the murder-for-hire scheme, which also used cellphones. The Second Circuit did not otherwise emphasize the fact of the wiretap investigation, and it cited authority in support of such seizures cases which similarly made no such distinction about the known extent of the investigation or use of wiretaps. See id. at 181 (citing United States v. Meregildo, No. 11 Cr. 576, 2012 WL 4378047, at *4 (S.D.N.Y. Sept. 24, 2012) ). The Court finds no unique circumstance that distinguishes the seizure of the Seized Electronic Devices here from the seizure of devices in Babilonia and Meregildo.
Therefore, the Court denies Kidd's Motion to Suppress evidence obtained from the Seized Electronic Devices on the basis that they are not inherently incriminating. The Court defers ruling on whether certain of the Seized Electronic Devices and Safes were in plain view during the protective sweep until after the evidentiary hearing scheduled for June 21, 2019.
D. MARCH 7 ELECTRONIC DEVICES WARRANT
Kidd argues that the March 7 Electronic Devices Warrant, issued to permit the search of the contents of the Seized Electronic Devices, was defective because of its overbreadth and lack of particularity. Specifically, Kidd contends that the March 7 Electronic Devices Warrant fails to identify the specific offense for which the Government has probable cause, instead offering a "naked recitation of code sections" rather than specifying "who the victim was, where, when or by what means the alleged sex trafficking took place." (Motion to Suppress at 16.) As a result of this lack of specificity, Kidd asserts it would be impossible for a searching officer to identify which materials on the Seized Electronic Devices are relevant to the March 7 Electronic Devices Warrant and which are not. Regarding overbreadth, Kidd claims the March 7 Electronic Devices Warrant authorizes seizure of information for which probable cause does not *374 exist, such as contact information for co-conspirators and for lengthy historical time periods.
The Government attempts to shift focus from the March 7 Electronic Devices Warrant to the details supplied in the affidavit of Special Agent Brian Gadner that accompanied the Government's warrant application. (See Gov. Opp'n at 23-25 (citing "Gadner Affidavit," Dkt. No. 25-2).) However, the Gadner Affidavit is not referenced in the March 7 Electronic Devices Warrant itself. Although a court may "construe a warrant with reference" to a supporting affidavit, it can do so only if the warrant "uses appropriate words of incorporation." Groh v. Ramirez, 540 U.S. 551, 557-58, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004). Therefore, the Court cannot rely on the Gadner Affidavit "to remedy" any "lack of particularity" in the March 7 Electronic Devices Warrant. United States v. George, 975 F.2d 72, 76 (2d Cir. 1992). Instead, when considering overbreadth, the Court can consult the Gadner Affidavit to determine only whether there was probable cause for the specific offenses listed in the March 7 Electronic Devices Warrant.
Generally, trial courts must defer to the issuing magistrate judge for the determination of whether a warrant had probable cause. See, e.g., United States v. Clark, 638 F.3d 89, 93 (2d Cir. 2011). However, a warrant can be defective in two respects. First, it can fail to describe the items to be seized with particularity. See e.g., Maryland v. Garrison, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). Warrants must describe (1) the specific offenses for which officers have established probable cause; (2) the place to be searched; (3) and the items to be seized in relation to their designated crimes. See United States v. Ulbricht, 858 F.3d 71, 99 (2d Cir. 2017). Conversely, when a warrant simply permits the seizure and search of property "which would tend to identify criminal conduct" it is not sufficiently particular. United States v. Rosa, 626 F.3d 56, 58, 62 (2d Cir. 2010) ("any and all electronic equipment potentially used in connection with the production or storage of child pornography" provided meaningless "parameters on an otherwise limitless search").
Second, a warrant is legally invalid for overbreadth to the extent it permits officers to search or seize items without probable cause that they contain evidence of a crime. See e.g., United States v. Hernandez, No. 06 CR. 625, 2010 WL 26544, at *7-8 (S.D.N.Y. Jan. 6, 2010). Although legally distinct, the discussion of these topics often overlap.
The Court must carefully consider the March 7 Electronic Devices Warrant to assess its particularity and breadth. The March 7 Electronic Devices Warrant specifically lists each of the Seized Electronic Devices as the "devices to be searched." (March 7 Electronic Devices Warrant at 3-4.) It limits the searching officers to review of the Seized Electronic Devices only for "evidence, fruits, and instrumentalities of violations" of Section 1591. (Id. at 4.) It expands on what that evidence may consist of with a list of eleven categories such as: "contact information for co-conspirators in the [ Section 1591 conspiracy]"; "opened and unopened voicemail messages related to [ Section 1591 offenses]"; and "digital photographs and video relating to [ Section 1591 offenses]." (Id. at 4-5.) Finally, it specifies that the searching officers review digital information only "created, sent, received, or obtained between January 1, 2012 and the present." (Id. at 4.)
These search details contained in the March 7 Electronic Devices Warrant sufficiently meet the particularity test laid out in Ulbricht. Courts in this circuit routinely *375 uphold similar warrants against similar particularity challenges when the challenged warrants permit the collection of evidence illustrated by a list related to a set of federal offenses. United States v. Jacobson, 4 F. Supp. 3d 515, 524 (E.D.N.Y. 2014) (upholding validity of warrants which "referenced particular crimes and used illustrative lists as a means of limiting the items to be seized"); United States v. Levy, No. 11 CR. 62, 2013 WL 664712, at *2-3 (S.D.N.Y. Feb. 25, 2013), aff'd, 803 F.3d 120 (2d Cir. 2015) (upholding validity of warrant permitting seizure of "[e]vidence, fruits, and instrumentalities of violations of" the federal wire fraud statute followed by an illustrative list of items, including business records, computers, and "electronic data storage devices").
Kidd's emphasis on the digital quality of the items to be searched does not compel a different result. Each of these earlier cases involved digital materials and found similar warrants valid when faced with similar challenges to their particularity. Moreover, the Second Circuit has recently and repeatedly upheld similar warrants, even when acknowledging the "special problems associated with searches of computers." See, e.g., Ulbricht, 858 F.3d at 101 (upholding the particularity of a warrant which "list[ed] the charged crimes, describe[d] the place to be searched, and designate[d] the information to be seized in connection with the specified offenses" and authorized the search of a laptop).
The Court is further persuaded that the March 7 Electronic Devices Warrant is not overbroad. Kidd challenges the substantive and temporal breadth of the March 7 Electronic Devices Warrant. First, Kidd argues that the search for "contact information for co-conspirators" is overbroad because "the [G]overnment has never contended that there are any co-conspirators." (Motion to Suppress at 16.) Second, Kidd argues that the search period is inappropriate because there is "no allegation by anyone that Mr. Kidd engaged in sex trafficking in 2013, 2014, or 2016." (Id. )
In assessing these challenges to the March 7 Electronic Devices Warrant's breadth, the Court now considers the accompanying Gadner Affidavit.
The Gadner Affidavit supports probable cause for the evidence regarding co-conspirators -- even if they are not included in the Original Indictment -- and during the designated search period. Regarding the conspiracy allegations, for example, the Gadner Affidavit describes that, in these sorts of crimes, "[t]raffickers often use their cellphones to communicate with ... customers." (Gadner Affidavit at 10.) And at least one earlier affidavit in this case had already described that minor victims met Kidd at an apartment in Brooklyn and then engaged in sex acts with customers. (See Mitchell Affidavit at 11.) This information is sufficient to justify the possible existence of co-conspirators, and the Court finds no reason to disturb the magistrate judge's finding of probable cause.
Next, the Gadner Affidavit lists potential trafficking crimes that occurred in 2012, 2015, 2017, and 2018 to justify a search period stemming from 2012 to 2019. The Court defers to the magistrate judge's determination that there was probable cause that Kidd's alleged criminal activities also encompassed the intervening years, even absent allegations of illegal conduct in 2013, 2014, or 2016 specifically. Kidd points to no similar cases involving a scheme occurring over multiple years in which a court required the search warrant application to provide illustrative criminal conduct in each year the digital device was in use. In fact, courts uphold search warrants that lack any sort of temporal limitation. See, e.g., *376 United States v. Triumph Capital Grp., Inc., 211 F.R.D. 31, 58 (D. Conn. 2002).
For all these reasons, the Court denies Kidd's Motion to Suppress any evidence obtained pursuant to the March 7 Electronic Devices Warrant, subject to the Court's determination of whether certain electronic devices were properly seized, a determination that will be made by the Court following the June 21, 2019 evidentiary hearing.
III. ORDER
For the reasons described above, it is hereby
ORDERED that the motion to suppress (Dkt. No. 20) of defendant Lloyd Kidd ("Kidd") is DENIED in part. The Court will consider the remainder of Kidd's arguments following the June 21, 2019 evidentiary hearing.
SO ORDERED.

Kidd separately moves to dismiss the Superseding Indictment (see Dkt. No. 30), but briefing has not been concluded on that motion and the Court does not address that motion in this Order.

Although the Government indicated that Kidd had not originally identified a privacy interest in the 7216 Number sufficient to challenge the December 4 Location Data Warrant, the Court accepts defense counsel's representation that the 7216 Number belongs to Kidd. (See Reply at 10.)

Although Kidd contests whether the online advertisements listed the 7216 Number, he concedes that a cellphone number was listed on the online advertisements. (See Dkt. No. 21 at 2.)

Indeed, the agent affidavit in support of the March 7 Electronic Devices Warrant explains numerous practices involving digital tools that "officers experienced in human trafficking" can readily identify. (See Dkt. No. 25-2 at 10-11.)