22-238-pr
*Harrell v. Miller*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of July, two thousand twenty-three.

PRESENT:
>GERARD E. LYNCH,
>JOSEPH F. BIANCO,
>MYRNA PÉREZ,
>>*Circuit Judges.*

———————————————————————

Lonnie Harrell,

>*Petitioner-Appellant,*

>v.                                                                22-238-pr

Mark Miller, Superintendent of Green Haven Correctional Facility,

>*Respondent-Appellee.*

———————————————————————

FOR PETITIONER-APPELLANT:           MATTHEW BOVA (Robert S. Dean, *on the briefs*), Center for Appellate Litigation, New York, NY.

FOR RESPONDENT-APPELLEE:           PRISCILLA STEWARD, Assistant Attorney General (Barbara D. Underwood, Solicitor General, and Nikki Kowalski, Deputy Solicitor

General for Criminal Matters, *on the brief*) *for* Letitia James, Attorney General of the State of New York, New York, NY.

Appeal from the judgment of the United States District Court for the Southern District of New York (Hellerstein, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Petitioner-appellant Lonnie Harrell appeals from a judgment of the United States District Court for the Southern District of New York (Hellerstein, *J.*) denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In that petition, Harrell challenged his conviction of two counts of Criminal Sexual Act in the First Degree, N.Y. Penal Law § 130.50(1); two counts of Sexual Abuse in the First Degree, N.Y. Penal Law § 130.65(1); two counts of Criminal Sexual Act in the Third Degree, N.Y. Penal Law § 130.40(2); and one count of Attempted Rape in the First Degree, N.Y. Penal Law § 130.35(1). The conviction arose out of Harrell's 2014 sexual assault of a fifteen-year-old girl in her Manhattan apartment. Harrell, who was fifty-one years old at the time, worked in the building and lived on the same floor as the victim and her family. Following a jury's verdict of guilt on all seven counts, the trial judge sentenced him to twenty five years' imprisonment, followed by fifteen years of post-release supervision.

This Court granted Harrell a certificate of appealability. *See* 28 U.S.C. § 2253(c). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, which we reference only as necessary to explain our decision to affirm.[1]

---

[1] Because we resolve Harrell's ineffective assistance of counsel claims on the merits, we decline to address his argument that the district court erred in finding the claims to be procedurally defaulted. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (explaining that courts may bypass a procedural default issue where

2

Harrell seeks habeas relief from this Court on the basis that he received ineffective assistance of counsel during his trial and at sentencing.[2]  Specifically, he contends that his counsel was deficient in failing to:  (1) move to exclude certain DNA evidence; (2) preserve a Fourth Amendment challenge to cellphone location data acquired via subpoena; (3) make certain objections during the State's summation; and (4) present mitigation evidence at sentencing.  For the following reasons, we find these claims are without merit.[3]

This Court reviews *de novo* a district court's denial of a habeas petition.  *McCray v. Capra*, 45 F.4th 634, 639 (2d Cir. 2022).  Where a state court issues a decision "on the merits," the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes that "a federal court can grant habeas only if the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented.'"  *Bell v. Miller*, 500 F.3d 149, 154–55 (2d Cir. 2007) (quoting 28 U.S.C. § 2254(d)).  This is a "highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citation omitted).

We analyze ineffective assistance of counsel claims using the framework established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  "Under *Strickland*, a

the merits are "easily resolvable against the habeas petitioner").

[2]  On appeal, Harrell is represented by different counsel.

[3]  As an initial matter, to the extent Harrell argues that he was entitled to an evidentiary hearing on his claims, we find that argument unpersuasive.  As discussed below, there were no disputed material facts that needed to be resolved to determine that he was not entitled to habeas relief.  *See Santone v. Fischer*, 689 F.3d 138, 155–56 (2d Cir. 2012).

defendant who claims ineffective assistance of counsel must prove (1) that counsel's representation fell below an objective standard of reasonableness and (2) that any such deficiency was prejudicial to the defense." *Garza v. Idaho*, 139 S. Ct. 738, 744 (2019) (internal quotation marks and citations omitted). To establish deficient performance, a petitioner must demonstrate that counsel's representation was objectively unreasonable "under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (internal quotation marks and citation omitted). To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. We consider the effect of Harrell's trial counsel's alleged errors "in the aggregate." *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001).

When applying AEDPA deference to an ineffective assistance of counsel claim, the question is "not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (internal quotation marks and citation omitted); *accord Palacios v. Burge*, 589 F.3d 556, 561–62 (2d Cir. 2009). Here, the state court rejected Harrell's claims on the merits, finding that counsel's performance was not objectively unreasonable under *Strickland*.[4] We accordingly review that portion of the state court decision under the deferential AEDPA standard. To the extent that we base our decision on the determination that Harrell cannot demonstrate prejudice under *Strickland*, our review is *de novo* because the state court did not reach this issue. *See Rompilla v. Beard*, 545

---

[4] Because the New York Appellate Division denied leave to appeal the state trial court's decision, we review the trial court's decision as it is "the last related state-court decision that . . . provide[s] a relevant rationale." *Scrimo v. Lee*, 935 F.3d 103, 111 (2d Cir. 2019) (quoting *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018)).

4

U.S. 374, 390 (2005); *see also Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) ("We may . . . affirm on any basis for which there is a record sufficient to permit conclusions of law . . . ." (internal quotation marks and citation omitted)).

## I.  Y-STR DNA Evidence

At trial, the State presented a form of DNA evidence known as a Y-STR analysis. This type of analysis focuses only on the DNA from the Y chromosome—which biological women do not have—and is typically used when the amount of a female's DNA on a particular sample may mask the presence of foreign male DNA. Thus, unlike an autosomal DNA profile which is unique to an individual (except for identical twins), many men, including relatives in a man's paternal line, share the same Y DNA profile. As the State's expert, a DNA criminalist, explained, the Y-STR evidence is "very useful . . . for making exclusions" because if a person's Y DNA profile is different from the Y DNA profile found on a sample, then that person can be excluded as a possible contributor. State R. at 1046. At trial, the expert testified that a Y-STR analysis was conducted on swabs taken from the victim's mouth and vaginal area after the assault because there was insufficient DNA from a male contributor to conduct an autosomal analysis on the samples. The State's Y-STR analysis of those swabs detected the presence of the profile of one male, and that the male profile was the same Y DNA profile as Harrell's Y DNA profile. Based on that evidence, the expert further explained that Harrell could not be excluded as a contributor for those DNA samples.

Harrell contends that his trial counsel was ineffective for failing to move to exclude the Y-STR DNA evidence on the grounds that it was more prejudicial than probative.[5] However, counsel

---

[5] Counsel moved to exclude this evidence only on chain of custody grounds.

5

cannot be faulted for not raising a meritless argument. *See Aparicio v. Artuz*, 269 F.3d 78, 100 (2d Cir. 2001). Under New York law, evidence is relevant if it has "any tendency in reason to prove the existence of any material fact . . . ." *People v. Frumusa*, 29 N.Y.3d 364, 371 (2017) (internal quotation marks and citation omitted). Moreover, "[a] court, in its discretion, may exclude relevant evidence if its probative value is substantially outweighed by the potential for prejudice." *People v. Jin Cheng Lin*, 26 N.Y.3d 701, 727 (2016) (internal quotation marks and citation omitted). The Y-STR analysis was probative because, as the State argued in its closing, it showed the "presence of male DNA and that[] . . . sex acts occurred," and it corroborated the victim's testimony because on "[e]very area that [the victim] told [the jury] that [Harrell] touched, there is presence of male DNA." State R. at 1168. That the Y-STR analysis showed that there was the presence of male DNA on the swabs was neither unduly prejudicial to Harrell nor did it risk confusing the jury.

Moreover, to the extent Harrell faults his trial counsel for not seeking to preclude the additional testimony that the Y DNA profile from the oral and vaginal swabs was the same as Harrell's Y DNA profile because the jury might be misled into believing there were unique autosomal matches on those samples, we conclude that Harrell failed to demonstrate that he was prejudiced by that testimony. To demonstrate prejudice under *Strickland*, Harrell must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. But Harrell cites no case in which any New York court has excluded Y-STR DNA evidence as unduly prejudicial. Moreover, as the state court's post-conviction decision explained, "[t]rial counsel effectively cross-examined the DNA criminalist and elicited that all paternal relatives of [Harrell] would have the same Y-STR DNA profile and that thousands of males could have contributed the DNA contained on the labial and oral swabs." State R. at 1516; *see also Harrington v. Richter*, 562 U.S. 86, 111 (2011)

6

("In many instances cross-examination will be sufficient to expose defects in an expert's presentation."). Indeed, Harrell's counsel emphasized in summation that "[Harrell] or one of his paternal male relatives could be the source of this DNA" and that "one in six hundred eighty-five African males, thousands of individuals in New York City, could have contributed that DNA to the labia and vulva of the [victim] if you want to speak scientifically about this." State R. at 1153. Discussing the Y-STR analysis, Harrell's counsel added: "You can't rule him out, but it doesn't mean it's him that made the contribution." *Id.* at 1154. Additionally, even the State acknowledged in its summation that "we're not saying . . . that this evidence, the Y strain evidence, proves that the defendant is the person who perpetrated the crime." *Id.* at 1168.

To be sure, while the New York Court of Appeals has found that a defense counsel who failed to object to the prosecution's *misrepresentation* of DNA evidence was ineffective, Harrell does not argue that there were misrepresentations with respect to the presentation of the Y-STR evidence at trial. *See People v. Wright*, 25 N.Y.3d 769, 780 (2015) (finding trial counsel ineffective under state law where "defense counsel failed to object when the prosecutor misrepresented the scientific import of the DNA evidence, suggested that the evidence directly linked defendant to the murder although it did not, and made statements that contradicted the expert testimony about the limitations of Y[-]STR DNA analysis"). Instead, in the instant case, the limitations of the Y-STR DNA analysis were clearly and accurately explained to the jury both during the criminalist's cross-examination and in the summations. In short, even assuming *arguendo* that trial counsel should have raised an objection to the Y-STR comparison to his DNA, Harrell failed to demonstrate prejudice under *Strickland*.

## II.    Cellphone Location Data

Harrell's claim that his counsel was ineffective for failing to preserve a Fourth Amendment

challenge to exclude his cellphone location data is also unavailing. It is well settled that "[c]ounsel is not required to forecast changes in the governing law." *Weingarten v. United States*, 865 F.3d 48, 53 (2d Cir. 2017) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)). Instead, the habeas court "must assesses counsel's conduct in light of the facts and law existing at the time [of the conduct] and 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Larrea v. Bennett*, 368 F.3d 179, 183 (2d Cir. 2004) (quoting *Strickland*, 466 U.S. at 689).

The state court correctly noted that, at the time of Harrell's trial, New York courts (including the Appellate Division's First Department) had held that the Fourth Amendment did not require a warrant to obtain cellphone location information. *See, e.g.*, *People v. Sorrentino*, 93 A.D.3d 450, 451 (1st Dep't 2012). Moreover, the U.S. Supreme Court's ruling in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), issued roughly three years after Harrell's trial, does not render trial counsel's performance deficient. In *Carpenter*, the Court extended Fourth Amendment protections to historical cellphone location information records. *Id.* at 2223. In that decision, however, the Court recognized that the defendant's Fourth Amendment claim "d[id] not fit neatly under existing precedents." *Id.* at 2214; *see also United States v. Zodhiates*, 901 F.3d 137, 144 (2d Cir. 2018) ("[P]rior to *Carpenter*, a warrant was not required for . . . cell records."). Although Harrell points to two decisions from other circuits (that were subsequently overturned *en banc*)[6]

---

[6] *See United States v. Graham*, 796 F.3d 332 (4th Cir. 2015), *rev'd en banc*, 824 F.3d 421 (4th Cir. 2016); *United States v. Davis*, 754 F.3d 1205 (11th Cir. 2014), *reh'g en banc granted, opinion vacated*, 785 F.3d 498 (11th Cir. 2015). However, because the *Graham en banc* decision was issued after the trial, we do not consider that subsequent legal development in assessing counsel's performance under *Strickland*. *Larrea*, 368 F.3d at 183 (explaining that counsel's performance under *Strickland* must be assessed under the "law existing at the time"). We also note that, at the time of Harrell's trial, at least one circuit had rejected Fourth Amendment protection of cellphone location data. *See In re Application of the United States for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013).

and one district court decision that supported his Fourth Amendment argument at the time of his trial, his counsel was not objectively unreasonable for failing to make an argument that was foreclosed under the binding law of the relevant jurisdiction and that even the Supreme Court recognized was not foreshadowed by its prior precedent. Therefore, the state court reasonably applied *Strickland* in holding that trial counsel's performance was not ineffective because of a failure to anticipate this future change in the law. *See, e.g.*, *United States v. Walsh*, 774 F. App'x 706, 708 (2d Cir. 2019) (summary order) ("We conclude that [the defendant] cannot show that his trial counsel's performance was ineffective [in failing to anticipate *Carpenter*] because we rejected the legal argument underlying his ineffective assistance claim in [*Zodhiates*].").

In any event, we also conclude that Harrell failed to show that he was prejudiced by his counsel's failure to preserve the Fourth Amendment claim. In this context, "to satisfy the second prong of the *Strickland* test, [the petitioner] must show that, but for his counsel's failure to preserve his . . . claim, there is a reasonable probability that the claim would have been considered on appeal and, as a result, his conviction would have been reversed." *Parker v. Ercole*, 666 F.3d 830, 834 (2d Cir. 2012) (per curiam). Harrell cannot make such a showing on the facts of this case. Because the State obtained Harrell's location data pursuant to a valid court-issued 18 U.S.C. § 2703(d) order, suppression would have been unwarranted under the good faith exception to the exclusionary rule. *See People v. Edwards*, 97 N.Y.S.3d 418, 422–23 (Sup. Ct. 2019) (declining to apply the exclusionary rule and suppress cellphone location information obtained pursuant to 18 U.S.C. § 2703(d) prior to *Carpenter*); *accord Zodhiates*, 901 F.3d at 143–44 (same). Put simply, even if Harrell's counsel had preserved the Fourth Amendment argument, admission of the cellphone evidence would not have resulted in reversal of his conviction even if the holding later articulated in *Carpenter* had been applied to his case on direct appeal.

9

In sum, Harrell failed to demonstrate either deficient performance or prejudice under *Strickland* with respect to the cellphone location data.

### III. Prosecutor's Remarks During Summation

Harrell further contends that his counsel was ineffective for failing to object to certain statements during the State's summation. He argues that his counsel was deficient for not objecting to the prosecution's suggestion that identity had been conceded by the defense when the prosecutor stated, "identification . . . is not really in dispute. [Harrell is] not claiming that someone else did this." State R. at 2414. He also contends that counsel was ineffective for failing to object to statements about the victim's personal milestones and plans for the future that could elicit inappropriate emotional reactions from the jury, and the prosecutor's suggestion that the reaction of the victim's parents confirmed that she was telling the truth. As set forth below, even assuming *arguendo* that counsel's failure to object to these comments was objectively unreasonable, we conclude that Harrell has failed to meet the prejudice prong under *Strickland*.

With respect to the statements about identity, defense counsel's summation attacked the Y-STR analysis regarding the swabs from the victim's mouth and vaginal area, but also conceded that Harrell was inside the victim's apartment on the day of the assault based upon the State's evidence—using an autosomal analysis—that Harrell's unique DNA was found both on a coffee cup he brought into the apartment and a straw he used to drink a smoothie while he was there. State R. at 1151 (defense counsel stating that "there is no dispute that Lonnie Harrell came into her apartment and had a Smoothie with her and the DNA evidence supports that a hundred percent"). Harrell's counsel further suggested in his summation, after discussing the victim's testimony and the medical records in detail, that the prosecution's evidence would be "consistent with the findings that this was consensual sex between Lonnie Harrell and [the victim]." *Id.* at

10

1158. Defense counsel ended his summation by arguing to the jury that a consensual sexual encounter with the victim would require an acquittal on the more serious counts because there was no forcible compulsion. Thus, the State argues that defense counsel had no basis to object to the prosecutor's subsequent remarks in summation because "[t]he prosecutor's statement that the issue of identification was 'not really in dispute' was a simple and accurate description of both the evidence and defense counsel's summation." Appellee's Br. at 59 (quoting State R. at 1160). Moreover, as the State argues, the comment did not "misle[a]d the jury into believing that defendant had conceded material issues." *People v. Pimentel*, 282 A.D.2d 280, 281 (1st Dep't 2001). On the contrary, it was made in the immediate context of the State's acknowledgement to the jury that it "ha[d] to prove identification, that the defendant was the perpetrator of all the crimes." State R. 1159.

Even assuming *arguendo* that the prosecutor's comments in summation that Harrell had conceded identity were improper and counsel's failure to object was unreasonable under *Strickland*, we conclude that Harrell has failed to satisfy the prejudice prong under *Strickland*. *See* 466 U.S. at 695 ("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."); *see also Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993) (explaining that petitioner could not demonstrate prejudice under *Strickland* where "the result of the . . . proceeding . . . was rendered neither unreliable nor fundamentally unfair as a result of counsel's failure to make [an] objection").

The State presented overwhelming evidence not only of Harrell's identity, but also that his sexual encounter with the victim was non-consensual. As the State emphasized in its summation, in addition to the autosomal DNA analysis placing Harrell in the apartment and the victim's

11

testimony, the jury also heard the victim's 9-1-1 call immediately following the assault and records showing that Harrell called the victim's cellphone ten times while she was on the line with the 9-1-1 operator. During the 9-1-1 call, the victim reported that a neighbor whom she knew and trusted had sexually assaulted her. The State also presented cellphone location data indicating that Harrell left the vicinity of the apartment building immediately after the assault. Finally, in addition to the medical evidence, the jury heard testimony from the responding law enforcement officers and hospital staff who described the victim's shock following the attack. In short, the State offered ample evidence both identifying Harrell and placing him at the scene at the time of the assault. On this record, there is no reasonable probability that the remarks by the prosecutor regarding identification not being in dispute based on defense counsel's summation affected the outcome of the trial.

We reach the same conclusion regarding the other allegedly improper comments by the prosecutor in summation, emphasizing the victim's personal milestones and future plans and the parents' reaction to the victim's report of the alleged sexual assault. These comments were brief references in a summation that focused on the compelling evidence of Harrell's guilt discussed above. Thus, Harrell has failed to demonstrate any reasonable probability that an objection to any of these remarks (even considered cumulatively) could have resulted in an acquittal on any of the counts of conviction. *See United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005) ("[A]bsent any prejudicial error in the Government's summation, the failure . . . to raise an otherwise futile objection could not have rendered counsel ineffective.").

Accordingly, Harrell's claim under *Strickland* regarding his counsel's failure to object to certain comments during the prosecutor's summation does not provide a basis for habeas relief.

IV.    **Sentencing**

12

Harrell contends that his counsel's ineffective performance at sentencing resulted in the court imposing a harsher sentence than he might have otherwise received. Harrell's counsel failed to present any argument for mitigation at sentencing. Notwithstanding Harrell's erratic behavior at trial, Harrell's statement that he "take[s] meds" and request that he be excused from courtroom to avoid "spaz[zing] out" in the presence of the jury, State R. at 1002, and the New York Department of Probation's recital in its Presentence Investigation report that Harrell "reported being treated for paranoid schizophrenia . . . on a monthly basis at Metropolitan Hospital prior to his arrest," *id.* at 2642, Harrell's counsel claimed he "was never aware of any mental-health diagnoses," *id.* at 325.[7] At sentencing, Harrell's counsel described his client as "angry" and only asked the court to sentence Harrell to the minimum sentence of ten to fifteen years' imprisonment without providing further argument. *Id.* at 1300. The record demonstrates that Harrell was represented poorly at sentencing. Nonetheless, we need not determine whether Harrell's counsel's deficient performance at sentencing fell below an objective standard of reasonableness, because Harrell cannot show prejudice under *Strickland*.[8]

To begin, defense counsel's comment that Harrell was "angry" was not made in the context of any sentencing arguments, but rather described to the court the reason that Harrell was refusing to appear at his own sentencing proceeding. *Id.* In particular, when asked by the court at the beginning of the proceeding whether his client was going to appear in the courtroom, defense

---

[7] Though not germane to the effectiveness of Harrell's representation at sentencing, Harrell's counsel would later hinder Harrell's post-conviction petition on the basis of ineffective assistance by refusing to provide an affidavit explaining his rationales for decisions and ignoring contact from Harrell's post-conviction counsel.

[8] Despite Harrell's arguments to the contrary, in this case, where trial counsel asked the court to impose the minimum sentence, there is no basis to presume prejudice. *See Bell v. Cone*, 535 U.S. 685, 697 (2002).

counsel indicated that his client was "very upset" regarding events that transpired during his trial. *Id.* Defense counsel further explained, "I asked him, don't you want to be present for sentencing. He was angry, he stood up in the small interview booth that we [were] in together and just walked out." *Id.* Moreover, even apart from defense counsel's response, it was already abundantly clear to the court that Harrell was angry that day based upon a court officer reporting to the court that Harrell "blatantly refuse[d] to exit the cell." *Id.* In short, Harrell has failed to demonstrate how defense counsel's description of his client's emotional state in refusing to appear at sentencing had any impact on the court's sentencing decision.

Harrell similarly failed to show that defense counsel's failure to further investigate or mention his mental health issues affected his sentencing. Though Harrell's counsel pleaded ignorance of Harrell's mental health issues, nothing indicates the court was similarly imperceptive. The Presentence Investigation report, prepared by the Probation Department after interviewing Harrell, independently alerted the court to Harrell's mental health issues—namely, that Harrell stated that "he was treated for paranoid schizophrenia and depression on a monthly basis." *Id.* at 2642. In addition, the court was undoubtedly aware of Harrell's mental health problems based upon its observations of Harrell's disruptive behavior during the trial. Indeed, Harrell's request to be excused from the courtroom because "I take meds. I don't want to spaz out in here," *id.* at 1002, was made in a colloquy with the court during the trial, and prompted the court to provide an accommodation of adjournment. Given the court's first-hand awareness of Harrell's mental health issues, there is no basis to conclude that defense counsel's failure to emphasize those issues at sentencing prejudiced Harrell.

14

Finally, in light of the compelling reasons the court provided for imposing a twenty-five-year sentence, Harrell has failed to demonstrate how a mitigating argument presented by defense counsel that highlighted his mental health issues would have resulted in a lower sentence. The court observed: "I think that if ever a case cried out for the maximum sentence this is it." *Id.* at 1312. In reaching that conclusion, the court considered testimony from the victim and her mother, emphasizing:

> So one can only imagine what it must have been like for [the victim] to be alone with that man, alone in an apartment with no one to help her, no one to hear her pleas for help. And we can only speculate as to just how terrified she must have been to be at the hands of what can only be described as a bully, 210[-]pound bully trying to have his way with a young lady and depriving her of her innocence.

*Id.* The court also took into account Harrell's criminal history, including a violent robbery for which he spent nearly twenty years in prison.[9] Finally, the court noted Harrell's disruptive conduct during the trial. Indeed, in rejecting Harrell's ineffective assistance of counsel claim in his Section 440.20 post-conviction motion (where Harrell outlined his mental health issues), the same sentencing judge reiterated that the above-referenced factors were the basis for his decision to impose a twenty-five-year sentence, rather than any deficiencies on the part of Harrell's counsel at sentencing.

In sum, given the court's clear view that these sentencing factors overwhelmingly supported the twenty-five-year sentence, Harrell has not shown that there is a reasonable probability a presentation by defense counsel of Harrell's mental health issues, or of other unspecified mitigating factors, would have changed the outcome at sentencing.

$$* \qquad * \qquad *$$

---

[9] Harrell had only finished serving that sentence about four years before he committed the assault here.

We have considered Harrell's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court
