22-287-cr
*United States v. Kidd*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of November, two thousand twenty-three.

Present:

> PIERRE N. LEVAL,
> SUSAN L. CARNEY,
> WILLIAM J. NARDINI,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

*Appellee*,

v.                                                                22-287-cr

LLOYD KIDD, AKA SEALED DEFENDANT 1, AKA CHRIS KIDD, AKA GERARD AGARD, AKA RED,

*Defendant-Appellant*.

---

| | |
|---|---|
| For Appellee: | JACOB H. GUTWILLIG (Mary E. Bracewell, Elinor L. Tarlow, David Abramowicz, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY |
| For Defendant-Appellant: | FLORIAN MIEDEL, Miedel & Mysliwiec LLP, New York, NY |

1

Appeal from a judgment of the United States District Court for the Southern District of New York (Victor Marrero, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Lloyd Kidd appeals from a judgment of the United States District Court of the Southern District of New York (Victor Marrero, *District Judge*), entered on January 31, 2022, convicting him of one count of sex trafficking a minor, in violation of 18 U.S.C. § 1591(a), (b)(2), and one count of inducement of a minor to engage in sexually explicit conduct, in violation of 18 U.S.C. § 2251(a), (e), following a jury trial. Kidd appeals his conviction, raising seven issues on appeal. We assume the parties' familiarity with the case.

## I. Venue

Kidd first argues that the trial evidence was insufficient to establish venue for his convictions in the Southern District of New York. A criminal trial must be held in the state and district where the crimes were committed. U.S. Const. Art. III, § 2, cl. 3; U.S. Const. Amend. VI; Fed. R. Crim. P. 18. Venue is proper in any district where the charged "offense was begun, continued, or completed," 18 U.S.C. § 3237(a), but only "where the acts constituting the offense— the crime's essential conduct elements—took place." *United States v. Purcell*, 967 F.3d 159, 186 (2d Cir. 2020).[1] Venue is "not proper in a district in which the only acts performed by the defendant were preparatory to the offense and not part of the offense." *Id.* "The government has the burden of proving proper venue . . . by a preponderance of the evidence," *United States v. Chow*, 993 F.3d 125, 143 (2d Cir. 2021), and "must satisfy venue with respect to each charge,"

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

*United States v. Davis*, 689 F.3d 179, 185 (2d Cir. 2012). We review *de novo* a district court's venue ruling. *United States v. Lange*, 834 F.3d 58, 69 (2d Cir. 2016).

The district court did not err in denying Kidd's Rule 29 motion challenging the propriety of venue for Count Five, which charged Kidd with production of child pornography. As the district court properly instructed the jury, that offense requires proof that "the defendant used, employed, persuaded, induced, enticed, [or] coerced [the victim] to take part in sexually explicit conduct for the purpose of producing or transmitting a visual depiction of that conduct." App'x at 1216. Here, the government presented evidence that Kidd repeatedly communicated with the victim via text message while she was in Manhattan. During these conversations, Kidd invited her to travel to Brooklyn to engage in sexually explicit conduct, some of which led to the production of the child pornography presented at trial. This inducement—which reached directly into Manhattan— sufficed to establish venue in the Southern District of New York. *Compare United States v. Thompson*, 896 F.3d 155, 172–74 (2d Cir. 2018) (concluding that venue was proper in the Eastern District for offense of producing child pornography because the defendant "enticed and groomed" the victim there), *with Purcell*, 967 F.3d at 187–88 (holding that venue was improper in the Southern District because none of the unlawful sexual activity occurred there, and there was no evidence that either the defendant or the victim were in the Southern District when the defendant contacted her enticing her to engage in prostitution).

The district court likewise properly concluded that venue was proper as to Count One, which charged Kidd with sex trafficking the victim as a minor. As the court instructed the jury, the government had to prove that Kidd "knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized or solicited" the victim to engage in prostitution. App'x at 1199. Kidd's repeated communications with the victim while she was in

3

Manhattan, which prompted her to travel to Brooklyn to engage in prostitution, constitutes solicitation that occurred in the Southern District.

## II. Suppression of Evidence

Kidd next argues that the district court erred by denying his motion to suppress evidence recovered from his electronic devices seized from his apartment. We disagree. The seizing agents were conducting a lawful protective sweep of Kidd's apartment incident to his arrest, *United States v. Lauter*, 57 F.3d 212, 216 (2d Cir. 1995), when they saw the electronic devices in plain view[2] and seized them. "During a protective sweep, officers are entitled to seize items that are in plain view if they have probable cause to suspect that the item is connected with criminal activity." *United States v. Kirk Tang Yuk*, 885 F.3d 57, 79 (2d Cir. 2018). "[T]he evidentiary significance of an item viewed must be assessed from the perspective of a law enforcement officer. Near certainty of the article's criminal character is not necessary. The matrix of facts and circumstances, including the experience and judgment of the police officer, must be weighed in determining whether the item is contraband." *United States v. Barrios-Moriera*, 872 F.2d 12, 17 (2d Cir. 1989), *abrogated on other grounds by Horton v. California*, 496 U.S. 128 (1990)). Here, the seizing officers had probable cause to suspect that the electronic devices contained incriminating evidence and/or contraband given both that their investigation had uncovered that Kidd's trafficking activities regularly involved taking photos, posting online prostitution advertisements, and communicating with a victim via phone, and their general knowledge based on training and

---

[2] To the extent Kidd argues that the electronic devices were not plainly visible, we reject that argument. The district court's finding that the seized items were in plain view was based on testimony from agents and another witness, as well as photographs of Kidd's apartment taken during the search. The district court credited the testimony of both agents and was persuaded by the testimony and the photos that the seized devices were in plain sight. We discern no clear error in this finding, especially given that "[w]hen, as here, credibility determinations are at issue, we give particularly strong deference to a district court finding," *United States v. Iodice*, 525 F.3d 179, 185 (2d Cir. 2008).

experience "that electronic devices are used to post and store photographs and other materials online." *United States v. Kidd*, 386 F. Supp. 3d 364, 372–73 (S.D.N.Y. 2019).

### III. Backpage.com Data

Kidd also challenges the district court's admission of advertisement reconstructions created using data drawn from two servers that were seized from Backpage.com (a now-defunct website once frequently used to advertise prostitution). He argues that the government failed to establish a sufficient foundation for the reconstructions because the agent who testified about creating them was not personally involved in the seizure of the Backpage servers. To authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is," which can take the form of (1) testimony from a knowledgeable witness "that an item is what it is claimed to be," or (2) evidence of the "appearance, contents, substance, internal patterns, or other distinctive characteristics" of the item, which "taken together with all the circumstances" demonstrate the authenticity of the evidence. Fed. R. Evid. 901(a), (b)(1), (b)(4). The test for admissibility is lenient: whether "it is more likely than not that the [evidence] offered at trial was the same as that recovered [during the original seizure]." *United States v. Gelzer*, 50 F.3d 1133, 1141 (2d Cir. 1995); *cf. United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014).

Here, the government's foundation surpassed this low threshold. An agent testified that: (1) he worked at the FBI's Pocatello, Idaho office; (2) his job responsibilities included identifying, analyzing, and preserving data obtained from servers; (3) servers from Backpage.com that were seized by the FBI are located in Pocatello, Idaho; (4) the data on the servers has been preserved by the FBI since their seizure; (5) the agent regularly responded to law enforcement requests for data from Backpage servers to reconstruct ads that appeared on the site; and (6) the agent had

familiarized himself with the content of the servers and had searched them in connection with this case. From this, and in the absence of any countervailing evidence, the court reached the sound conclusion that the agent "would have familiarity with the data that was extracted from these servers," App'x at 533–34. This conclusion was bolstered by the "contents, substance, [and] distinctive characteristics" of the data in question, Fed. R. Evid. 901(b)(4); namely, that it contained advertisements for prostitution, including text and images that Kidd admitted to posting on Backpage.com. Accordingly, the district court properly admitted the data and corresponding reconstructions.

## IV. Rule 33 Motion

Kidd next challenges the district court's denial of his motion for a new trial under Federal Rule of Criminal Procedure 33. The district court did not abuse its discretion by denying the motion as untimely. The motion was filed nearly two years late, *see* Fed. R. Crim. P. 33(b)(2), and defense counsel did not make the required showing of "excusable neglect," *see* Fed. R. Crim. P. 45(b)(1)(B). "[W]hether the neglect was excusable is . . . an equitable [consideration] that should be made by considering the danger of prejudice to the [non-movant], the length of the delay and its potential impact upon judicial proceedings, the reason for the delay, including whether it was in the reasonable control of the movant, and whether the movant acted in good faith." *United States v. Hooper*, 9 F.3d 257, 259 (2d Cir. 1993) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)) (interpreting "excusable neglect" in the context of Fed. R. App. 4(b)). The district court noted that the length of delay was significant; that, because of the delay, granting the motion would result in risk of prejudice to the government due to unavailability of trial witnesses at a hypothetical retrial, a risk the court considered especially great "in this case, considering the youth of the trial witnesses and the sensitive nature of their

6

testimony," *United States v. Kidd*, No. 18 CR 872(VM), 2021 WL 2935971, at *3 (S.D.N.Y. July 13, 2021); and that the interests in finality of the verdict and in proceeding with sentencing counseled against permitting the late-filed motion. It permissibly found that defense counsel did not provide a "justifiable reason for the delay," *id.*: any COVID-related excuse was undermined by the fact that nine months had elapsed after the conviction before the onset of the pandemic. The court was also justifiably unpersuaded by counsel's explanation that it was not aware of the evidence underlying the Rule 33 motion because it was focused only on the Rule 29 venue motion after being appointed CJA counsel.

The district court's second independent ground for denying the motion—that the motion failed on the merits in any event—was also not erroneous. The motion argued that trial counsel rendered constitutionally ineffective assistance in violation of the Sixth Amendment by failing to highlight that the victim identified herself in a set of photos featuring a female subject who clearly did not have a tattoo on the front of her right thigh, and in a second set of photos taken a few months later featuring a female subject pictured with a large tattoo on the front of her right thigh. The argument raised before the district court faulted counsel for not focusing on the unexplained presence of the tattoo in the second set of photos.

To succeed on an ineffective assistance claim, the defendant must show both "that counsel's performance was deficient" and that "counsel's errors were so serious as to deprive the defendant of a fair trial." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Our review of trial counsel's performance is highly deferential, and "matters of trial strategy and tactics . . . are virtually unchallengeable absent exceptional grounds." *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005). To establish prejudice, "[t]he defendant must show that there is a reasonable

7

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The district court correctly concluded that Kidd failed to meet this standard because (1) Kidd and the victim both identified the victim as the person with the tattoo in the second set of photos; (2) "Kidd had previously proposed concealing victim identities with fake tattoos," *Kidd*, 2021 WL 2935971, at \*4; and (3) "the appearance of a tattoo in one set of photos and not another does not categorically establish that the photos were not of the same person," *id.* Moreover, Kidd never came forward with any evidence tending to suggest that the victim did not get a tattoo in the intervening period, much less that his trial counsel had reason to believe that was the case. It was therefore not unreasonable for trial counsel to decline to highlight the tattoo discrepancy on summation, given that it was vulnerable to easy refutation by the government. At bottom, trial counsel's decision not to highlight the tattoo discrepancy was a tactical one, not subject to later second-guessing, and there is no reasonable likelihood that taking a different tack would have resulted in acquittal on either count given the strength of the other evidence, especially given that Kidd has not adduced any evidence indicating that the victim did not get a tattoo in the interim.

Kidd also argues that his trial counsel should have focused on the computer metadata for the first set of photos (which indicated that they were created in February 2017) to attack the credibility of the victim when she testified that those photos had been taken in the spring of 2015. Had counsel followed this strategy, he argues, the victim's credibility would have crumbled, Kidd would not have taken the stand, and he accordingly would not have given incriminating testimony tending to show that he knew she was a minor. Kidd's new argument is unpersuasive because it is based on a wholly speculative reconstruction of how trial might have unfolded. This alternate strategy might have yielded a Pyrrhic victory. Even if counsel had convinced the jury that the

8

photos had not been taken in early 2015 but instead in February 2017, the victim was still underage then. In other words, a defense focus on the metadata would have shifted the jury's attention away from the victim's testimony to credible evidence that the defendant was trafficking the victim and using her to create child pornography while she was a minor (albeit while she was only one month shy of eighteen versus two years shy of eighteen). Moreover, we cannot conclude that this line of questioning would have changed the landscape of trial so dramatically that Kidd would likely have chosen not to testify—especially given that he was charged with several other counts and that his counsel's strategy with respect to those counts was seemingly effective, as Kidd was acquitted of them.

In short, Kidd makes no showing that this speculative chain of events would have been likely to occur, much less that a reasonable lawyer would have regarded such an approach as an unquestionably superior strategy; or that it is reasonably probable that such a strategy would have produced a better result for Kidd, both of which are required to meet the extremely high burden of showing that counsel was constitutionally ineffective. In short, we detect no error, plain or otherwise, arising from trial counsel's performance.[3]

## V.    Prosecutorial Misconduct and District Court Bias

We find Kidd's final arguments—that the government committed prosecutorial misconduct and that the district court was biased against him—to be without merit.

"Where, as here, the defendant did not object at trial to the statements forming the basis of his [prosecutorial misconduct claim], the plain error standard applies." *United States v. Williams*, 690 F.3d 70, 75 (2d Cir. 2012). On plain error review, a new trial is not warranted absent "flagrant

---

[3] Kidd also argues in his *pro se* brief that his trial counsel was ineffective for failing to cross-examine the victim about issues related to venue. But that claim is belied by the trial record, which shows that counsel questioned the victim about her first meeting with Kidd in Brooklyn. In any event, trial counsel's strategy and tactics are "virtually unchallengeable absent exceptional grounds" that are not present here. *Cohen*, 427 F.3d at 170.

9

abuse which seriously affects the fairness, integrity, or public reputation of judicial proceedings, and causes substantial prejudice to the defendant." *Id.* None of the issues Kidd raises, even if we were to credit them, rise to the level of affecting the fairness or integrity of the trial.

As relevant here, we reverse for judicial bias where the judge's remarks "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible," *Liteky v. United States*, 510 U.S. 540, 555 (1994), and "the jurors have been impressed with the trial judge's partiality to one side to the point that this became a factor in the determination of the jury," *United States v. Mulder*, 273 F.3d 91, 109 (2d Cir. 2001). None of the instances Kidd cites suggests even the slightest bias on the part of the district court.

*     *     *

For the reasons stated above, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk